**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-00351-RMR-STV

MATTHEW GUNSALLUS,

     Plaintiff,

v.

DAVID HESTAND,
COLIN CARSON,
MARSHALL GRIFFITH,
LARRY COX, AND
STEVEN SALAZAR,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Entered By Magistrate Judge Scott T. Varholak

     This matter is before the Court on Defendant Marshall Griffith's Motion to Dismiss (the "Griffith Motion") [#17] and Defendants David Hestand, Colin Carson, Larry Cox and Steven Salazar's Motion to Dismiss (the "BCCF Motion") [#25] (collectively, the "Motions").  The Motions have been referred to this Court.  [## 18, 26] The Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions.  For the following reasons, the Court respectfully **RECOMMENDS** that the Griffith Motion be **GRANTED IN PART and DENIED IN PART** and that the BCCF Motion be **GRANTED**.

I.    **BACKGROUND**[1]

The instant lawsuit arises out of the conditions of confinement during Plaintiff's incarceration by the Colorado Department of Corrections ("CDOC") at the Bent County Correctional Facility ("BCCF"), a private prison operated by CoreCivic pursuant to a contract with the CDOC.  [##1 at ¶ 2; 25 at 1]  Plaintiff is Native American of Lakota descent.  [#1 at ¶ 1]  Plaintiff generally alleges that Defendants interfered with Plaintiff's right to practice his Lakota faith and failed to follow CDOC Administrative Regulations ("ARs"). [*See generally* #1]

Specifically, Plaintiff alleges that on June 23, 2022, a Native American holy day, Defendant David Hestand, the BCCF Faith Coordinator, denied Plaintiff access to the faith grounds, which are "paramount to [Plaintiff's] faith practices." [#1 at 2; *id*. at ¶¶ 5-7, 35]  Plaintiff alleges that Defendant Hestand denied Plaintiff's access because there were more than 15 worshippers and no direct supervision, precluding the group gathering pursuant to AR 800-01.[2]  [*Id*. at ¶¶ 8-12]

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint (the "Complaint") [#1], which must be taken as true when considering the Motion.  *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

[2] The Court may take judicial notice of CDOC regulations.  *Allen v. Clements*, 930 F. Supp. 2d 1252, 1260 n.2 (D. Colo. 2013) (*citing Ray v. Aztec Well Serv. Co*., 748 F.2d 888, 889 (10th Cir. 1984)).  AR 800-01 is a CDOC-wide policy governing the practice of religion. [#25-1]  AR 800-01 acknowledges the right of inmates to engage in religious activities and "establishe[s] guidelines and consistent standards for the practice of recognized faith groups." [*Id*. at 1]  AR 800-01 requires CDOC facilities to "ensure that offenders have the opportunity to participate in practices of their faith group." [*Id*.] This is, however, limited in several ways.  For instance, AR 800-01(IV)(O)(4) limits the number of offenders allowed to gather to practice their faith in a group setting, based on the classification of the offenders and whether or not employees and/or volunteers are supervising the event.  [#25-1 at 6]

After that day, various prison officials continued to deny Plaintiff access to the faith grounds. Specifically, on June 27, 2022, Plaintiff told Defendant Hestand that the individuals seeking to practice their faith on the faith grounds are directly supervised by CDOC employees, and therefore Defendant Hestand should permit them to access the faith grounds. [*Id*. at ¶ 8] In support, Plaintiff alleges the BCCF faith grounds are part of the recreation area, which is supervised at all times by at least two recreation officers. [*Id*. at ¶ 11] The area is also regularly observed by patrol officers, case managers, commissary officers and miscellaneous officers who "constantly walk by during a ceremony." [*Id*.] The faith grounds are also under surveillance by master control and the private prison monitoring unit. [*Id*.] Nonetheless, on July 22, 2022, Defendant Colin Carson, an Assistant Warden, also denied Plaintiff access to the faith grounds based on the absence of direct supervision. [*Id.* at 3; *id*. at ¶ 15] And on December 14, 2023, Defendant Hestand again denied Plaintiff access to the faith grounds. [*Id*. at ¶ 18]

On December 17, 2023, after another denial of access to the prayer grounds, Plaintiff approached Defendant Steven Salazar. [*Id*. at ¶ 18] Defendant Salazar is the Chief of Programs and Defendant Hestand's supervisor. [*Id*.; *id*. at 7] Defendant Salazar deferred to Defendant Hestand's decision-making about who gets access to the faith grounds and directed Plaintiff to send him a kite. [*Id*. at ¶¶ 19-20]

On December 15, 2023, Plaintiff approached Defendant Larry Cox, an Assistant Warden and Defendant Salazar's supervisor, to address the repeated denials of access to the faith grounds. [*Id*. at 7; *id*. at ¶ 21] Plaintiff told Defendant Cox that "the AR does not require [Plaintiff] to 'look Indian' in order to practice [his] faith and that [Defendant Cox]

should instruct [Defendant Hestand] to give [Plaintiff] access to the faith grounds." [3]  [*Id*.
at ¶ 23]  Defendant Cox told Plaintiff "to get out of his face with this shit." [*Id*.  at ¶ 24]

Plaintiff completed the relevant grievance process, but the Step 3 grievance was
not investigated.[4]  [*Id*.  at ¶ 27]  Plaintiff alleges that the CDOC Grievance Officer,
Defendant Marshall Griffith, "simply stated [that Plaintiff] did not submit documentation to
support [his] claims . . . [but] [a] simple call to the facility would have provided support that
the faith grounds are in the recreation area and are under supervision from recreation
officers." [*Id*. at 3; *id*.  at ¶ 28]

As a result of Defendants' actions, Plaintiff alleges that he is "spiritually suffering"
and, on December 26, 2023, Plaintiff attempted to kill himself. [*Id*. at ¶ 40] Since that day,
Plaintiff gets debilitating headaches.  [*Id*. at ¶ 43]  The Complaint seeks declaratory and
injunctive relief, as well as damages.  [*Id*. at 6, 12]

Plaintiff, proceeding pro se, filed the instant action on February 5, 2024.  [#1]  The
Complaint asserts claims under 42 U.S.C. § 1983 ("Section 1983") for violations of
Plaintiff's First and Fourteenth Amendment rights, as well as a claim under the Religious
Land Use and Institutionalized Persons Act ("RLUIPA").  [*Id*. at 4, 8-11]  Plaintiff sues all
Defendants in their individual capacities and sues Defendant Griffith in his official capacity
as well.  [*Id*. at 2-3, 7]

---

[3] Plaintiff appears to allege that Defendant Hestand previously denied Plaintiff's access
to the faith grounds because Plaintiff "look[s] white." [*Id*. at ¶ 13]
[4] The CDOC maintains a three-part administrative remedy scheme. CDOC Admin. Reg.
No. 850-04 ("AR 850-04"). The Step 3 grievance is the final step in the CDOC's grievance
process and an inmate is required to complete Steps 1 through 3 in order to exhaust the
CDOC's grievance process.  *Id*.

4

On April 18, 2024, Defendant Griffith filed the Griffith Motion. [#17]  On May 6, 2024, Defendants Hestand, Carson, Cox and Salazar (collectively, the "BCCF Defendants") filed the BCCF Motion.  [#25]  Plaintiff did not file a response to the Motions. [#27]

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction."  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). Although the plaintiff bears the burden of establishing jurisdiction, when the challenge is facial, the court must accept as true all well-pleaded facts and construe all reasonable allegations in the light

most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996) (citations omitted). "In reviewing a factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,'" and "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff

6

to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### C.    Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[5]  *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).  The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

---

[5] Once qualified immunity has been asserted, it is the plaintiff's burden to show both that they have alleged a constitutional violation and that that violation was clearly established. *Bledsoe v. Carreno*, 53 F.4th 589, 606, 617 n.25 (10th Cir. 2022).  The Tenth Circuit, however, has recently instructed that a court must independently "use its full knowledge of its own and other relevant precedents" in engaging in a qualified immunity analysis. *Jordan v. Jenkins*, 73 F.4th 1162, 1174 n.10 (10th Cir. 2023).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The Supreme Court of the United States has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id.* at 66 n.8.  The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (quotation omitted).

**D.    Pro Se Pleadings**

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

## III.   ANALYSIS

The Motions seek dismissal of all of Plaintiff's claims. [##17, 25]  The Motions allege that: (1) Plaintiff's Fourteenth Amendment claim fails due to the availability of a First Amendment claim [##17 at 4-5; 25 at 8]; (2) Defendants cannot be subject to an individual capacity claim under the RLUIPA [#25 at 7-8]; (3) Plaintiff fails to allege sufficient facts to plausibly allege a constitutional violation [##17 at 3-4; 25 at 2-7, 8-11]; and Defendant Griffith is entitled to qualified immunity [#17 at 5-6]. The Court addresses each argument in turn.

### A.   Fourteenth Amendment

Defendants argue that the Fourteenth Amendment claim fails due to the availability of a First Amendment claim. [## 17 at 4-5; 25 at 8]  The Court agrees. At bottom, Plaintiff alleges that Defendants denied him the right to free exercise of religion by preventing him from accessing the faith grounds. [*See generally* #1] These allegations, however, are more appropriately analyzed under the First Amendment, not the more generalized provisions of substantive due process. *See Graham v. Connor,* 490 U.S. 386, 395 (1989) (examining an excessive force claim under the Fourth Amendment, rather than the Fourteenth Amendment, "[b]ecause the Fourth Amendment provides an explicit textual

source of constitutional protection against this sort of physically intrusive governmental conduct, [and therefore] that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims"); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (examining the inmate-plaintiffs' claims for the denial of medical care under the Eighth Amendment, rather than the Fourteenth Amendment, because "where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process").

Furthermore, Plaintiff does not develop any distinct arguments in support of an alleged due process violation; rather, the allegations supporting a due process violation mirror those allegations in support of the religious discrimination claim. [#1 at ¶ 29 ("Mr. Hestand violated my substantive due process right by failing his duties to know and follow CDOC policy, his contractual duties and state law. This lead[s] to a violation of my freedom of exercise under the First Amendment."); *id.* at ¶ 31 ("Carson violated my substantive due process rights by failing his duties to follow CDOC policy, his contractual responsibilities and his failure to follow state law. . . . These failures lead to a violation of my freedom of exercise under the First Amendment."); *id.* at ¶¶ 33-34 ("Mr. Salazar violated my substantive due process right because as the [H]ead of Programs, he could have easily made sure Hestand was following ARs or state statute. . . . His refusal to provide even a simple solution to the problem violated RLUIPA."); *id.* at ¶ 37 ("Cox violated my substantive due process right because as the assistant warden he could have easily made sure that Hestand and Salazar were following the ARs, contractual duties and state statutes. His failure . . . lead[s] to a complete deprivation in my ability to practice

my faith in violation of RLUIPA and the First Amendment Free Exercise Clause."); *id*. at ¶ 38 ("Griffith violated my substantive due process rights by failing his duties to investigate my claim or attempt a meaningful remedy. . . . Griffith's failure in his duties . . . lead[s] to a violation of my Freedom of Exercise under the First Amendment."). Thus, the Court must review Plaintiff's allegations under the First Amendment, rather than the Fourteenth. *See Riddle*, 83 F.3d at 1202.

Accordingly, the Court respectfully RECOMMENDS that the Motions be GRANTED to the extent that they seek dismissal of Plaintiff's Fourteenth Amendment claim. Because the First Amendment will always be the more appropriate constitutional provision for analyzing Plaintiff's claims, the Court respectfully RECOMMENDS that this claim be DISMISSED WITH PREJUDICE.

### B.    RLUIPA

Plaintiff asserts a religious discrimination claim in violation of the RLUIPA against Defendants. [#1 at 4]  BCCF Defendants assert that Plaintiff's RLUIPA claim asserted against them in their individual capacities fails as a matter of law.  [#25 at 7-8]  The Court agrees.

The Supreme Court has held that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." *Sossamon v. Texas*, 563 U.S. 277, 293 (2011).  As a result, "[t]he only relief available to [a plaintiff] under RLUIPA is declaratory and injunctive relief against defendants in their official capacities."  *Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013); *Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) ("RLUIPA is limited to official capacity

claims for equitable relief.")  Plaintiff thus may not assert RLUIPA claims against Defendants in their individual capacities.  *See Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("[T]here is no cause of action under RLUIPA for individual-capacity claims.").  Accordingly, the Court respectfully RECOMMENDS that the BCCF Motion be GRANTED to the extent that it seeks dismissal of Plaintiff's RLUIPA claim insofar as it is asserted against the BCCF Defendants in their individual capacities or seeks monetary damages, and that this portion of the claim be DISMISSED WITHOUT PREJUDICE.  *See Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) (dismissal for lack of subject matter jurisdiction is generally without prejudice).  And although this argument was not raised in the Griffith Motion, the Court sua sponte RECOMMENDS that Plaintiff's RLUIPA claim for damages be dismissed against Defendant Griffith, in his individual capacity, for the same reasons.[6]  *See, e.g., United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) ("[A] court may raise the issue of Eleventh-Amendment immunity sua sponte.").

### C.    First Amendment

Plaintiff asserts claims under Section 1983 for violations of Plaintiff's First Amendment rights against all Defendants in their individual capacities and sues Defendant Griffith in his official capacity as well.  [#1 at 2-3, 7] The Court will address the individual capacity claims first and then turn to the official capacity claim against Defendant Griffith.

---

[6] In construing the Complaint liberally, it appears Plaintiff also seeks declaratory relief under the RLUIPA against Defendant Griffith acting in his official capacity. [#1 at 3, 6] The Griffith Motion, however, does not challenge the RLUIPA claim; therefore, the Court will not address the sufficiency of this portion of the claim.

### 1.    Individual Capacity

First, Defendants argue the First Amendment claims must be dismissed in part, as Plaintiff fails to allege sufficient personal participation by each Defendant in the alleged constitutional violation.  [##17 at 3-4; 25 at 5-6] The Court agrees that Plaintiff fails to allege sufficient personal participation as to Defendants Salazar, Cox and Griffith.

Individual liability under Section 1983 must be based on personal participation or involvement in the alleged constitutional violation.  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997).  Moreover, "[a] defendant cannot be liable under a respondeat superior theory in a section 1983 case."  *Raile v. Ortiz*, No. 05–1345, 2006 WL 991102, at *2 (10th Cir. Apr. 17, 2006) (quoting *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir.1983)); *see also Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.1996) (supervisor status insufficient by itself to support liability under section 1983; rather, personal participation of defendant is essential).  In order to establish supervisory liability there must be "an affirmative link . . . between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997) (quotation omitted).

Here, while Plaintiff alleges Defendants Hestand and Carson personally denied Plaintiff access to the faith grounds [#1 at ¶¶ 7, 15], Plaintiff merely alleges that Defendant Griffith failed to adequately address and investigate Plaintiff's grievances and Defendants Salzar and Cox failed to correct an alleged constitutional violation committed by a subordinate. [#1 at ¶¶ 18-28]  But, "[d]enial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation for purposes of

a Section 1983 claim." *Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013). Similarly, "a defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior." *Jones v. Werholz*, No. 13-cv-01380-BNB, 2013 WL 4873063, at *2 (D. Colo. Sept. 10, 2013). Accordingly, the Court respectfully RECOMMENDS that the Motions be GRANTED to the extent that they seek dismissal of Plaintiff's First Amendment claim asserted against Defendants Salazar, Cox and Griffith[7] in their individual capacities, and that this portion of the claim be DISMISSED WITHOUT PREJUDICE. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

Second, Defendants argue the First Amendment claim must fail as to Defendants Hestand and Carson as Plaintiff fails to state a claim. [#25 at 8-11] "[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). "First, the

---

[7] Because The Court finds that Plaintiff has not plausibly alleged a First Amendment claim against Defendant Griffith in his individual capacity, Defendant Griffith is entitled to qualified immunity. *See Montoya v. Vigil* , 898 F.3d 1056, 1064 (10th Cir. 2018) ("It is true that if the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to qualified immunity."); *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) ("If the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity." (quotation omitted)).

prisoner-plaintiff must . . . [allege] that a prison regulation [or practice] substantially burdened . . . sincerely-held religious beliefs." *Id.* (quotation omitted). "With respect to the second inquiry in a free exercise claim, 'prison-official defendants may identify the legitimate penological interests that justified the impinging conduct,' and the court must apply a balancing test to determine the reasonableness of the regulation." *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) (quoting *Kay*, 500 F.3d at 1218-19). However, "only the first of these inquiries is relevant at the motion-to-dismiss stage." *Id.* (citing *Kay*, 500 F.3d at 1219); *Ashaheed v. Currington*, No. 17-cv-3002-WJM-SKC, 2019 WL 1953357, at *4 (D. Colo. May 2, 2019) (same).

Thus, "[t]o state a claim for violation of the First Amendment's Free Exercise Clause, a plaintiff must plead facts that plausibly show or allow the inference that the prison regulation or action at issue 'substantially burdened sincerely-held religious beliefs.'" *Khan v. Barela*, 808 F. App'x 602, 614 (10th Cir. 2020) (quoting *Kay*, 500 F.3d at 1218). And a "burden on a religious exercise rises to the level of being 'substantial' when . . . the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief." *Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014) (expressing substantial burden test under RLUIPA); *see also Orwig v. Williams*, No. 16-cv-00781-PAB-SKC, 2019 WL 4751775, at *8 (D. Colo. Sept. 30, 2019) ("To determine whether plaintiff has made an initial showing of a substantial burden on religious exercise, courts use the same test under the First Amendment as is used under RLUIPA."). Here, Plaintiff alleges Defendants violated his First Amendment rights

when they denied him access to the faith grounds on several days, including a Native American holy day.  [*See generally* #1]  And Defendants do not dispute in the Motions that Plaintiff's religious belief, which requires him to access the faith grounds, is sincerely held or that Defendants' actions, in denying him access to the faith grounds, substantially burdened Plaintiff's ability to exercise this religious belief.  [S*ee generally* ## 17, 25]

But this does not end the analysis—in order to plead a First Amendment claim, a plaintiff must also plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.  *Gee v. Pacheco*, 627 F.3d 1178, 1187-88 (10th Cir. 2010) ("Because *Turner* [*v. Safley*, 482 U.S. 78 (1987)] allows prohibitions and restrictions that are reasonably related to legitimate penological interests, [an inmate] must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." (emphasis in original)); *see also Khan,* 808 F. App'x at 616 n. 14 (10th Cir. 2020) (analyzing whether the plaintiff alleged a lack of a legitimate penological interest as part of his free-exercise claim); *Boles v. Colorado Dep't of Corr.,* No. 19-CV-01158-WJM-STV, 2021 WL 11449163, at *26 n. 42 (D. Colo. Feb. 16, 2021) (same), *report and recommendation adopted*, No. 19-CV-1158-WJM-STV, 2021 WL 2743498 (D. Colo. Mar. 19, 2021); *Sabbath v. Hicks*, No. 20-CV-00893-PAB-KMT, 2021 WL 1300602, at *4 (D. Colo. Feb. 19, 2021) (noting that a plaintiff must allege a lack of legitimate penological interest for both a free exercise and a free speech claim), *report and recommendation adopted*, No. 20-CV-00893-PAB-KMT, 2021 WL 1015986 (D. Colo. Mar. 17, 2021).  An inmate need not "identify every potential legitimate interest and plead against it."  *Gee*, 627 F.3d at 1188.  But he must "plead facts from which a plausible inference can be drawn

that the action was not reasonably related to a legitimate penological interest." *Id*. And

doing so might require the inmate to "recite[ ] facts that might well be unnecessary in other

contexts. For example, . . . a prisoner claim may not be plausible unless it alleges facts

that explain why the usual justifications for the complained-of acts do not apply." *Id*. at

1185.

In the Complaint, Plaintiff cites AR 800-01, which identifies the penological need

to maintain the safety and security of the correctional facility. [##1 at ¶ 10; 25-1 at 7

("Group gatherings may be limited for safety and security reasons.")] Safety and security

are legitimate penological interests. *See*, *e.g.*, *Estate of DiMarco v. Wyo. Dep't of Corr.,*

*Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007) (identifying safety as an example

of a legitimate penological interest). The question, then, is whether Plaintiff pleaded facts

from which the Court can plausibly infer that the denial of Plaintiff's request was not

reasonably related to the safety and security of the prison. The Court concludes that he

has not.

Plaintiff alleges that Defendants Hestand and Carson denied Plaintiff access to the

faith grounds on account of there being no direct supervision. [#1 at ¶¶ 7-10, 15] AR

800-01 requires "direct employee supervision" or that "a volunteer [be] present to conduct

the program" when there is a religious group gathering of a certain size. [#25-1 at 6]

Plaintiff's faith group was approximately 15 people, triggering the requirement for either

a volunteer or direct supervision. [*Id*.; #1 at ¶¶ 10, 14]. In the Complaint, Plaintiff appears

to dispute the institutional need for direct employee supervision as the BCCF faith

grounds are generally supervised at all times by at least two recreation officers; the area

is also regularly observed by patrol officers, case managers, commissary officers and

miscellaneous officers who "constantly walk by during a ceremony;" and the faith grounds are also under surveillance by master control and the private prison monitoring unit.  [#1 at ¶ 11]  But, prison officials may reasonably conclude that absent **direct** employee supervision of the religious gathering, the group congregation creates an unsafe prison environment.  And it is inappropriate for courts to "'substitute [their] judgement on . . . difficult and sensitive matters of institutional administration' . . . for the determinations of those charged with the formidable task of running a prison."  *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 353 (1987) (quoting *Block v. Rutherford*, 468 U.S. 576, 588 (1984)).  This Court will not second-guess the prison official's determination that a congregation of more than 15 people, without volunteer participation or direct supervision, creates an unsafe prison environment.  And Plaintiff has not pleaded sufficient facts from which the Court can plausibly infer that the denial of Plaintiff's request, in strict adherence to the administrative regulation, was not reasonably related to the safety and security of the prison.

Accordingly, the Court respectfully RECOMMENDS that the BCCF Motion be GRANTED to the extent that it seeks dismissal of Plaintiff's First Amendment claim against Defendants Hestand and Carson in their individual capacities, and that this portion of the claim be DISMISSED WITHOUT PREJUDICE.  *See Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127.

## 2.    Official Capacity

It appears Plaintiff asserts a First Amendment claim against Defendant Griffith in his official capacity for declarative relief.[8]  [#1 at 3, 6]   Although Defendant Griffith does not brief any argument for dismissal related to the official capacity claims [#17], the Court will address Eleventh-Amendment immunity sua sponte. *United States ex rel. Burlbaw,* 548 F.3d at 942 (" [A] court may raise the issue of Eleventh-Amendment immunity sua sponte." ); *Cary v. Hickenlooper*, No. 14-cv-00411-PAB-NYW, 2015 WL 5353823, at *1 (D. Colo. Sept. 15, 2015) (dismissing official capacity claims sua sponte as barred by sovereign immunity), *aff'd*, 673 F. App'x 870 (10th Cir. 2016).

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent."  *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008).  "State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction."  *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011).  Sovereign immunity extends to state agencies functioning as an "arm" of the state, including the CDOC.  *Id*.  Because Defendant Griffith is a Grievance Officer for the CDOC [## 1 at 3; 17 at 2], he may "assert Eleventh Amendment immunity as an 'arm' of the state in that [he] assumes the identity of" the CDOC.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002); *see also Brackeen v. Brown*, No. 11-cv-01677-RBJ-KMT, 2013 WL 328937, at *4 (D. Colo. Jan. 8, 2013) ("Plaintiff's claims for monetary relief against the CDOC Defendants in their official

---

[8] While Plaintiff asserts claims for injunctive relief as well, it appears that this relief is directed only towards Defendants Salazar and Hestand, each of whom were only sued in their individual capacities. [#1 at 7, 12]

capacities constitute claims against the Colorado Department of Corrections." (citing *Will
v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)), *report and recommendation
adopted*, 2013 WL 329007 (D. Colo. Jan. 29, 2013).

"Sovereign immunity . . . extends to state officials sued in their official capacities
for retrospective relief."  *Wood*, 414 F. App'x at 105; *see also Stovall v. Raemisch*, No.
14-cv-02069-KMT, 2015 WL 5280908, at *3 (D. Colo. Sept. 10, 2015) ("If the [declaratory]
relief sought is actually retrospective, it is barred by the Eleventh Amendment.").
"Remedies are considered 'retrospective' when they are designed to compensate
individuals for past violations or to indirectly encourage compliance with federal law
through deterrence." *Clark v. Jones*, No. CIV-08-05-C, 2008 WL 2951073, at *2 (W.D.
Okla. July 28, 2008).  Here, it is unclear whether Plaintiff seeks prospective or
retrospective declaratory relief.  [#1 at 6 ("Declare I have a First Amendment right to
practice my Lakota faith. . . .  Declare that failure to recognize or provide direct supervision
violates RLUIPA.")]  To the extent Plaintiff seeks retrospective relief, however, his claims
are barred by the Eleventh Amendment.

There are two primary exceptions to the sovereign immunity doctrine: Congress
may abrogate a state's Eleventh Amendment immunity, or a state may waive its sovereign
immunity and consent to be sued.    *Ruiz*, 299 F.3d at 1181.  Neither exception applies
here.  Section 1983 "does not abrogate state sovereign immunity—indeed, states are not
even 'persons' within the meaning of § 1983." *Wood*, 414 F. App'x at 105 (citing *Will*, 491
U.S. at 71); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) ("Neither states
nor state officers sued in their official capacity [for monetary damages] are 'persons'
subject to suit under section 1983."  (citing *Will*, 491 U.S. at 70-71)).  And Plaintiff does

not argue that Colorado has consented to this suit. [*See generally* #1]; *see also Wood*, 414 F. App'x at 105 (finding that the Eleventh Amendment barred the plaintiff's official capacity claims against CDOC officials and noting that the plaintiff did not argue that Colorado had consented to the lawsuit).

Accordingly, the Court finds that the Eleventh Amendment bars Plaintiff's retroactive declaratory relief claims against Defendant Griffith in his official capacity and the Court thus lacks subject matter jurisdiction over such claims. The Court thus respectfully RECOMMENDS that Plaintiff's First Amendment claim against Defendant Griffith in his official capacity, to the extent it seeks retroactive declaratory relief, be DISMISSED WITHOUT PREJUDICE. *See Garman*, 630 F.3d at 985.

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that the BCCF Motion [#25] be **GRANTED** and the Griffith Motion [#17] be **GRANTED IN PART AND DENIED IN PART,** such that all claims against Defendants be dismissed without prejudice except Plaintiff's: (1) RLUIPA claim for declaratory relief against Defendant Griffith in his official capacity, and (2) First Amendment claim for prospective declaratory relief against Defendant Griffith in his official capacity**.** [9]

---

[9] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal

DATED: September 4, 2024                    BY THE COURT:

                                            s/Scott T. Varholak
                                            United Stated Magistrate Judge

---

conclusions, and recommendations and will result in a waiver of the right to appeal from
a judgment of the district court based on the proposed findings of fact, legal conclusions,
and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-
80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's
recommendation *de novo* despite lack of an objection does not preclude application of
"firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d
901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain
portions of magistrate judge's order by failing to object to those portions); *Ayala v. United
States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to
appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-
Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule
does not apply when the interests of justice require review).